**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| BRIAN EDWARD ANDERSON<br>and CATHRYN DENISE ANDERSON, | §<br>§<br>§<br>§ | |
| Plaintiffs, | §<br>§ | Civil Action No. _____ |
| v. | §<br>§ | With Jury Demand Endorsed |
| WELLS FARGO BANK, N.A. D/B/A WELLS<br>FARGO HOME MORTGAGE, | §<br>§<br>§ | |
| Defendant. | §<br>§ | |

**COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiffs, Brian Edward Anderson ("Mr. Anderson") and Cathryn Denise Anderson ("Mrs. Anderson") (collectively, "Plaintiffs"), by and through counsel, for their Complaint against Defendant, Wells Fargo Bank, N.A. dba Wells Fargo Home Mortgage ("Wells Fargo" or "Defendant"), state as follows:

**I. INTRODUCTION**

1.     Defendant engaged in willful, malicious, coercive, deceptive and harassing actions against Plaintiffs in furtherance of Defendant's efforts to illegally collect from Plaintiffs, *in personam*, a debt they did not owe, as the debt was included in and discharged in their bankruptcy case, while Defendant knew: the real property securing the debt was surrendered in Plaintiffs' bankruptcy case, the debt was discharged as to Plaintiffs' personal liability in their bankruptcy case, and they were subject to the protection of the discharge injunction issued in their bankruptcy case. Defendant, its knowledge of the foregoing notwithstanding, committed the following acts

against Plaintiffs after their discharge: 1) impermissibly obtained and used Plaintiffs' consumer reports from Experian on at least ten (10) occasions; and 2) misrepresented information about Plaintiffs and/or the status of the discharged debt and account to Experian to impermissibly obtain and use Plaintiffs' confidential, personal information contained in their consumer reports, which Defendant in turn misrepresented to Plaintiffs.

2.     Specifically, Plaintiffs claim Defendant violated: 1) 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"); 2) Texas Finance Code § 392.001 *et seq.*, known as the Texas Debt Collection Act (the "TDCA"); 3) Plaintiffs' common law privacy rights; and 4) the discharge injunction of the United States Bankruptcy Court for the Northern District of Fort Worth, Division. Plaintiffs seek to recover from Defendant actual, statutory, and punitive damages, and legal fees and expenses.

## II. PARTIES

3.     Plaintiffs are natural persons residing in Harris County, Texas, and they are "consumers," as defined by the FCRA, 15 U.S.C. § 1681a(c), and the TDCA, Tex. Fin. Code § 392.001(1).

4.     Defendant is a national bank which is engaged in the business of consumer finance in this district, the State of Texas, and in other states in the United States. Defendant may be served by delivering a summons to its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

5.     Defendant is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b); and a "creditor," "debt collector," and/or "third-party debt collector" under the TDCA, Tex. Fin. Code §§ 392.001(3), (6) and (7).

-2-

6.      The debt at issue Defendant was attempting to collect from Plaintiffs was a "consumer debt," as defined by Tex. Fin. Code § 392.001(2).

### III. JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1334, and 1367, and 15 U.S.C. § 1681p.

8.      Venue is proper in this district, because Defendant transacts business in this district, and a substantial part of the conduct complained of occurred in this district. Specifically, the actions made basis of Plaintiffs' claims against Defendant occurred in the Eastern District of Texas at the Experian Regional Headquarters in Allen, Texas.

### IV. FACTUAL ALLEGATIONS

**A.      The Subject Debt Was Discharged as to Plaintiffs' Personal Liability in Their Bankruptcy Case.**

9.      Prior to Plaintiffs filing their Bankruptcy Case, Defendant asserted a pre-petition claim against Plaintiffs to attempt to collect a consumer debt they allegedly owed. The debt required Plaintiffs to pay money arising out of transactions of which money, property, insurance, or services were the subject, and the same were primarily for personal, family, or household purposes.

10.      On February 6, 2012, Plaintiffs filed for bankruptcy under Chapter 13 of the U.S. Bankruptcy Code in case number 12-40693-mxm13 ("Bankruptcy Case") in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division ("Bankruptcy Court").

11.      On "**SCHEDULE D – CREDITORS HOLDING SECURED CLAIMS**" filed with their Petition in their Bankruptcy Case, Plaintiffs listed the subject debt as a secured claim, identified as Wells Fargo Loan No. xxxxxxxxx5046 ("Loan" or "Account"), secured by a lien on

Plaintiff's previous home located at 7213 Little Mohican Drive, Fort Worth, Texas 76179 (the "Property"), with Defendant identified as the creditor.

12.     On February 6, 2012, Plaintiffs filed with the Bankruptcy Court a mailing matrix that provided Defendant's correct address.

13.     On or about February 10, 2012, the Bankruptcy Noticing Center for the Bankruptcy Court sent a copy of the "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors and Deadlines" ("341 Notice") to Defendant by first class mail. The 341 Notice warned all creditors, in conspicuous language, against violating the automatic stay imposed by 11 U.S.C. § 362. The United States Postal Service did not return the 341 Notice sent to Defendant, creating a presumption it was received.

14.     On or about January 5, 2016, Plaintiffs filed their modified plan after confirmation, ("Modified Plan"), noting their surrender of the Property to Defendant and an Amended Matrix that again provided Defendant's correct address.

15.     A true and correct copy of Plaintiff's Modified Plan is attached hereto as Exhibit "A."

16.     On February 17, 2016, the Bankruptcy Court entered an order granting Plaintiff's Modified Plan.

17.     On January 26, 2017, Defendant filed a Motion for Relief from Stay as to the Property ("Motion to Lift Stay"), so it could lift the bankruptcy automatic stay and proceed with foreclosure on the Property, and an Agreed Order conditioning the Motion to Lift Stay was entered on June 13, 2012.

18.     On February 24, 2017, the Bankruptcy Court entered an order granting Defendant's Motion to Lift Stay.

19.     On May 26, 2017, the Bankruptcy Court issued an order granting Plaintiffs a discharge ("Discharge Order"). The Discharge Order discharged Plaintiffs from any liability for the debt created by the Account. The Discharge Order also ordered that "[a]ll creditors are prohibited from attempting to collect any debt that has been discharged in this case."

20.     On May 28, 2017, the Bankruptcy Noticing Center mailed a copy of the Discharge Order to Defendant by both electronic transmission and first-class mail. These mailings, which were not returned, constituted notice to Defendant of the discharge granted in Plaintiffs' Bankruptcy Case and the replacement of the automatic stay with the discharge injunction imposed by 11 U.S.C. §524(a).

21.     A true and correct copy of the Discharge Order is attached hereto as Exhibit "B."

22.     At no time during the pendency of Plaintiffs' Bankruptcy Case did Defendant or any other person or entity object to or dispute the details or completeness of the claim on the Account listed on Schedule "D" of Plaintiffs' Petition.

23.     At no time did Plaintiffs reaffirm the debt on the Account with any person or entity.

24.     At no time did the Bankruptcy Court declare the debt on the Account to be non-dischargeable.

**B.     After the Discharge of the Debt in Plaintiffs' Bankruptcy Case, Defendant Attempted to Collect the Discharged Debt from them Personally, as Evidenced by Defendant Impermissibly Obtaining Their Personal and Confidential Information from Experian.**

25.     After the May 26, 2016 entry of the Discharge Order in Plaintiffs Bankruptcy Case, Defendant engaged in prohibited actions against Plaintiffs' in furtherance of its illegal debt

collection actions, including: (1) impermissibly obtaining and using Plaintiffs' consumer reports from Experian; and (2) misrepresenting to Experian information about the status of the Account, in order to impermissibly obtain and use Plaintiffs confidential, personal information contained in their consumer reports to further its illegal collection attempts against Plaintiff.

**1. Defendant Impermissibly Obtained and Used Plaintiffs' Experian Consumer Reports on At Least Ten (10) Occasions.**

26.     After Plaintiffs received their bankruptcy discharge, which, by operation of law, made the debt legally uncollectible from Plaintiffs personally and, in effect, closed the Account and ended any debtor-creditor relationship between Plaintiffs and Defendant, Defendant impermissibly obtained and used Plaintiffs' consumer reports from Experian on at least ten (10) occasions, as stated below:

1) June 8, 2017 (Mr. Anderson's consumer report);

2) June 8, 2017 (Mrs. Anderson's consumer report);

3) September 6, 2017 (Mr. Anderson's consumer report);

4) September 6, 2017 (Mrs. Anderson's consumer report);

5) December 5, 2017 (Mr. Anderson's consumer report);

6) December 5, 2017 (Mrs. Anderson's consumer report); and

7) March 12, 2018 (Mr. Anderson's consumer report); and

8) March 12, 2018 (Mrs. Anderson's consumer report); and

9) June 5, 2018 (Mr. Anderson's consumer report); and

10) June 5, 2018 (Mrs. Anderson's consumer report);.

27.     Relevant and redacted excerpts from Mr. Anderson's and Mrs. Anderson's Experian credit reports, showing Defendant's impermissible account reviews, are attached hereto as Exhibits "C" and "D," respectively.

>    **2.     To Gain Access to and Impermissibly Obtain Plaintiffs' Consumer Reports, Defendant Reported and Furnished False Information to Experian About the Account or Plaintiffs, and Falsely Reported a Permissible Purpose to Experian to Check Plaintiffs' Credit.**

28.     To impermissibly access Plaintiffs' credit files with Experian and obtain Plaintiffs' consumer reports and personal financial information contained therein, Defendant furnished and reported false information to Experian about the Account or Plaintiffs, i.e., misrepresenting it had a legally permissible purpose to access their confidential and protected information in their credit files and obtain consumer reports for Plaintiffs, ostensibly to insure or monitor its account and/or to evaluate an application for credit by Plaintiffs. However, inasmuch as there was no open and active account between Defendant and Plaintiffs post-discharge, as it was closed upon the discharge of the debt on the Account as to Plaintiffs' personal liability, and because Plaintiffs did not seek credit from Defendant or engage in any business dealings with Defendant at any time after filing their Bankruptcy Case, Defendant's obvious and only purpose for obtaining Plaintiff's consumer reports and using the information therein was to gather information about Plaintiffs in furtherance of its illegal collection attempts on the Account and subject discharged debt.

### V. GROUNDS FOR RELIEF - COUNT I

### FAIR CREDIT REPORTING ACT (FCRA 15 U.S.C. §1681 *et seq.*)

29.     Plaintiffs repeat, re-allege, and incorporate by reference the foregoing paragraphs, as if fully rewritten here.

30.     The FCRA establishes very specific limits as to when and why an entity can obtain

a consumer report:

> (f) CERTAIN USE OR OBTAINING OF INFORMATION PROHIBITED. – A person shall not use
> or obtain a consumer report for any purpose unless –
>
>> (1) the consumer report is obtained for a purpose for which the consumer report is
>> authorized to be furnished under this section; and
>>
>> (2) the purpose is certified in accordance with section 1681e of this title by a
>> prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b (f).

31.     Section 1681b(a)(3) of the FCRA lists the only purposes for which a consumer

report can be obtained; it states, in relevant part:

> (a) IN GENERAL. – * * * any consumer reporting agency may furnish a consumer
> report under the following circumstances and no other:
>
>> ***
>>
>> (3) To a person which it has reason to believes –
>>
>>> (A) intends to use the information in connection with a credit transaction
>>> involving the consumer on whom the information is to be furnished and
>>> involving the extension of credit to, or review or collection of an account
>>> of, the consumer;
>>>
>>> ***
>>>
>>> (E) intends to use the information, as a potential investor or servicer, or
>>> current insurer, in connection with a valuation of, or an assessment of the
>>> credit or prepayment risks associated with, an existing credit obligation; or
>>>
>>> (F) otherwise has a legitimate business need for the information-
>>>
>>> * * *

> (ii) to review an account to determine whether the consumer continues to meet the
> terms of the account.

*See* 15 U.S.C. § 1681b(a)(3).

32.     Section 1681a(d)(1) defines a "consumer report" as:

> (d) CONSUMER REPORT. –

(1) IN GENERAL. – The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a fact in establishing the consumer's eligibility for-

    (A) credit or insurance to be used primarily for personal, family, or household purposes;

    (B) employment purposes; or

    (C) any other purpose authorized under section 1681(b) of this title.

15 U.S.C. § 1681a(d)(1).

33.    After Plaintiffs' bankruptcy discharge, Defendant obtained and used Plaintiffs' consumer reports from Experian without a permissible purpose.

34.    To obtain and use Plaintiffs' consumer reports, Defendant misrepresented to Experian that the purpose for its request to obtain Plaintiffs' consumer reports was so it could monitor, review or insure the Account, which was purportedly open and collectible, or to evaluate a credit application from Plaintiffs, when, in fact, Defendant knew the Account had been discharged and that there had been no such credit application by Plaintiffs.

35.    If Defendant represented to Experian that it intended to use the information in Plaintiffs' consumer report in connection with a valuation of, or an assessment of the credit or prepayment risks associated with an existing credit obligation on the Account or on an application by Plaintiffs, that representation was false, because the discharge effectively ended any previous business relationship between the parties, and there had been no such credit application by Plaintiffs.

36.    At the time Defendant requested and obtained access to Plaintiffs' consumer reports and the confidential information therein from Experian, as described hereinabove, Defendant had

actual knowledge it did not have a permissible purpose to obtain and use Plaintiffs' consumer reports from any of the CRAs.

37.     At all relevant times, Defendant had actual knowledge that after, and as a result of, the discharge granted in Plaintiffs' Bankruptcy Case, the discharge injunction was in effect, and Defendant knew it was legally prohibited from pursuing any collection against Plaintiffs on the discharged Account or communicating with Plaintiffs about the Account and, accordingly, that it was prohibited from accessing and obtaining Plaintiffs' consumer reports and using Plaintiffs' confidential personal information kept therein by the CRAs.

38.     After Plaintiffs' discharge in their Bankruptcy Case, Defendant obtained and used Plaintiffs' consumer reports from Experian, despite the fact Defendant had actual knowledge Plaintiffs had not requested credit from it and had not initiated a business transaction with it after the discharge. Thus, Defendant had actual knowledge it did not have any permissible purpose to access, obtain and/or use Plaintiffs' consumer reports and the confidential information contained therein, but it did so anyway.

39.     At the times Defendant accessed, or attempted to access, Plaintiffs' credit reports after Plaintiffs' discharge, Defendant had actual knowledge Plaintiffs had not authorized Defendant's access to and reviews of their consumer reports and that the Account was closed and legally uncollectible. Accordingly, at the times Defendant conducted or requested the impermissible account review(s), it had actual knowledge it did not have a permissible purpose to obtain and use Plaintiffs' consumer reports and the confidential and protected information contained therein.

40.     Defendant's requests for, and obtaining of, Plaintiffs' private personal and financial information from Experian in their credit files and consumer reports, when it had actual knowledge it had no permissible purpose to do so, constitute knowing and willful violations of the FCRA.

41.     Plaintiffs believe that, after reasonable discovery, they will be able to prove Defendant obtained and used Plaintiffs' consumer reports, and private, personal and financial information it obtained therefrom, for the illegal purpose of attempting to collect from them personally on the discharged Account.

42.     Plaintiffs believe that, after reasonable discovery, they will be able to prove Defendant used false pretenses, namely the representation(s) Defendant made to Experian that it intended to use Plaintiffs' consumer report(s) for a permissible purpose, when, under the FCRA, Defendant had no permissible purpose to do so, in order to obtain and use Plaintiffs' private, personal and financial information from Experian for the illegal purpose of attempting to collect from them personally on a discharged debt.

43.     Plaintiffs believe that, after reasonable discovery, they will be able to prove Defendant is unwilling or unable to prevent its system(s) or agents from requesting and obtaining Plaintiffs' consumer report(s) without a permissible purpose to do so, thereby subjecting Plaintiffs to having their private, personal and financial information disclosed without their consent, authorization or other legal justification.

44.     As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered, and will continue to suffer, substantial injury, including, but not limited to, mental anguish and emotional distress, entitling them to an award of actual damages in an amount to be proved at trial, plus attorneys' fees, together with the costs of this action, pursuant to 15 U.S.C. § 1681o.

45.     The injuries suffered by Plaintiffs as a direct result of Defendant's impermissibly obtaining and using their consumer reports were attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiffs to recover punitive damages pursuant to 15 U.S.C. § 1681n(a)(2). Because Defendant's impermissible acquisition and use of Plaintiffs' consumer reports will have a continuing adverse impact on Plaintiffs, and because the violations may be ongoing in nature, Defendant is liable for any and all future harm suffered by Plaintiffs as a result of Defendant's actionable conduct.

## VI. GROUNDS FOR RELIEF - COUNT II

### TEXAS FINANCE CODE – TEXAS DEBT COLLECTION ACT (TDCA)

46.     Plaintiffs repeat, re-allege, and incorporate by reference all of the preceding paragraphs, as if rewritten here in their entirety.

47.     Defendant has violated the Texas Finance Code in numerous ways, including, but not limited to, the following:

a)     Tex. Fin. Code § 392.301(a)(8) prohibits Defendant from threatening to take an action prohibited by law; inasmuch as the bankruptcy discharge injunction prohibits anyone from attempting to collect debts discharged in bankruptcy *in personam*, Defendant's reporting on Plaintiffs' credit report that it had a permissible purpose to review their credit from Experian, implying there was a debtor-creditor relationship between Defendant and Plaintiffs post-discharge, was a threat to Plaintiffs that Defendant was going to continue trying to collect the discharged debt from them;

b)     Tex. Fin. Code § 392.304(a)(8) prohibits misrepresenting the character, extent, or amount of Plaintiff's debt; Defendant misrepresented to Experian that it had a permissible purpose under the FCRA to obtain and use Plaintiffs' consumer reports post-discharge, which was in turn misrepresented to Plaintiffs on their consumer reports to deceive them to believe Defendant had a right to collect on the Account from them and to coerce them to pay the discharged debt; and

c)     Tex. Fin. Code § 392.304(a)(19) prohibits Defendant's use of false representations or deceptive means to collect a debt; for the reasons stated in the preceding paragraphs, Defendant was deceptively trying to coerce Plaintiffs into

paying the subject debt, when it knew the debt was included in or discharged in their bankruptcy and legally uncollectible from Plaintiffs *in personam* at all times at issue.

48.     Under Tex. Fin. Code Ann. § 392.403, Defendant's actions at issue make it liable to Plaintiffs for actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees under the TDCA. Also, Plaintiffs' injuries resulted from Defendant's malice and/or actual fraud, which entitles Plaintiffs to recover punitive damages.

49.     Due to Defendant's conduct, Plaintiffs were forced to hire counsel, and their damages include reasonable attorney's fees incurred in prosecuting this claim.

## VII. GROUNDS FOR RELIEF - COUNT III

### INVASION OF PRIVACY

50.     Plaintiffs repeat, re-allege, and incorporate by reference the foregoing paragraphs, as if fully rewritten here.

51.     Defendant's impermissibly obtaining of Plaintiffs' consumer reports from Experian at all times post-discharge constituted invasions of Plaintiffs' private affairs and privacy rights. These invasions were ones that would be highly offensive to a reasonable person, because confidential and sensitive personal and financial information is included in a consumer report. Post-discharge, Plaintiffs had not consented to Defendant pulling their credit reports, and there was no permissible purpose for Defendant to obtain Plaintiffs' consumer reports post-discharge. The wrongful acts of Defendant caused injuries to Plaintiffs.

52.     Plaintiffs' injuries resulted from Defendant's malice, entitling Plaintiffs to recover exemplary damages pursuant to Texas Civil Practice and Remedies Code § 41.003(a).

## VIII. GROUNDS FOR RELIEF- COUNT III

### VIOLATION OF THE BANKRUPTCY DISCHARGE INJUNCTION

53.     Plaintiffs repeat, re-allege, and incorporate by reference the foregoing paragraphs, as if fully rewritten here.

54.     At all material times, Defendant had actual knowledge of Plaintiffs' Bankruptcy Case and of the discharge of the debt on the Account, but Defendant, nevertheless, attempted to collect from Plaintiffs personally on the discharged debt, as evidenced by Defendant making the impermissible account review inquiries as part of an orchestrated attempt to coerce or deceive them to make payment on the discharged Account.

55.     Defendant's actions were willful acts in furtherance of its efforts to collect the discharged debt from Plaintiffs, in violation of the discharge injunction imposed by 11 U.S.C. § 524(a). Further, Defendant's acts were harassing and attempts to coerce and deceive Plaintiffs to pay the discharged debt. Defendant's failure to comply with the aforesaid laws, despite Defendant's being on notice of Plaintiffs' Bankruptcy Case, the discharge therein, and the effect of Plaintiffs' discharge, illustrates Defendant's utter contempt for federal law and the discharge injunction.

56.     The actions of Defendant constitute harassment and coercive and/or deceptive actions taken to collect a discharged debt from Plaintiffs personally, in gross violation of the discharge injunction imposed by 11 U.S.C. § 524(a)(1)-(3).

57.     Defendant knowingly and willfully violated the orders and injunctions of the Bankruptcy Court issued in Plaintiffs' Bankruptcy Case. After this prima facie showing by Plaintiffs, the duty falls on Defendant to show, as its only permitted defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court, which inability must go beyond a mere assertion of inability. Failing a showing by Defendant of its present inability to comply

with the orders and injunctions of the Bankruptcy Court, Plaintiffs must prevail on their claims, and Defendant must be held liable for knowingly and willfully violating the orders and injunctions of the Bankruptcy Court. Any other defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant. Any allegation of a good faith exception should not be allowed.

58.     Specifically, Defendant violated that part of the Bankruptcy Court's Discharge Order issued pursuant to 11 U.S.C. § 524(a)(2) that "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived…."

59.     There are no exceptions under 11 U.S.C. § 524, other provisions of the United States Bankruptcy Code, or other applicable law that permit Defendant's conduct, which was in blatant disregard of the discharge injunction.

60.     The orders and injunctions of the Bankruptcy Court cannot be waived, except by way of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint, none of which occurred here. No waiver of the orders or injunctions of the Bankruptcy Court has occurred.

61.     Also, there is no requirement of mitigation on the part of Plaintiffs that is relevant to Defendant's violations of the orders and injunctions of the Bankruptcy Court. Any burdening of Plaintiffs with an obligation to police the misconduct of Defendant would be a complete derogation of the law. It is well-settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for bearing the cost

of compliance. Any attempt by Defendant to mount such a defense in this proceeding would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court, which is prohibited. Any such defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendant. No defense of failure to mitigate should be allowed.

62.     Plaintiffs have been injured and damaged by Defendant's actions, and Plaintiffs are entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for Defendant's violations of 11 U.S.C. § 524 and pursuant to the Court's powers under 11 U.S.C. § 105.

## IX. VICARIOUS LIABILITY/*RESPONDEAT SUPERIOR*

63.     Plaintiffs believe that, after reasonable discovery, they will be able to show that all actions at issue were taken by employees, agents, servants, or representatives of Defendant, the principal, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability on Defendant for all such actions under the doctrine of *respondeat superior* and/or vicarious liability.

## X. DAMAGES

64.     In addition to any damages previously stated hereinabove, the conduct of Defendant at issue has proximately caused Plaintiffs monetary loss; past and future mental distress; emotional anguish and a discernable injury to Plaintiffs emotional state; and other damages, evidence for all of which will be presented to the jury. Moreover, dealing with the consequences of Defendants' actions has cost Plaintiffs time and mental energy, which are precious to them.

65.     At all relevant times, Defendant knew, and it continues to know, that, pursuant to a discharge order granted by a U.S. Bankruptcy Court, discharged debts are no longer legally collectible from the debtors personally, but Defendant made a corporate decision, knowingly, willfully, maliciously, and contrary to its knowledge of bankruptcy law, to attempt to collect on the debt it knew had been discharged as a result of Plaintiffs' Bankruptcy Case. Moreover, there was no longer a debtor-creditor relationship between Plaintiffs and Defendant after their bankruptcy discharge, and Defendant had no right to engage in any of its actions at issue.

66.     Plaintiffs believe that, after reasonable discovery in this case, they will be able to show that all actions taken by, or on behalf of, Defendant were conducted maliciously, wantonly, recklessly, intentionally, knowingly, and/or willfully, with the desire to harm Plaintiffs, with the actual knowledge that such actions were in violation of the law.

67.     Plaintiffs believe that, after reasonable discovery, they will be able to show that Defendant's actions at issue are an integral part of Defendant's illegal design, implemented in its policies and procedures, to profit by harassing unsophisticated debtors and collecting debts that had been included and discharged in the debtors' respective bankruptcy cases.

68.     Plaintiffs believe that, after reasonable discovery, they will be able to show that Defendant has been involved in numerous disputes involving complaints about the type of conduct at issue here; nevertheless, Defendant, intentionally and knowingly, has refused to correct its policies and comply with applicable laws, of which laws Defendant is well aware.

69.     Plaintiffs believe that, after reasonable discovery, they will be able to show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior, in accordance with its established policies and procedures, with respect to knowingly, willfully, intentionally,

and maliciously attempting to collect on debts discharged in bankruptcy, including, but not limited to accessing Plaintiffs' credit reports and reporting misleading information to the CRAs to be included in Plaintiffs' credit reports regarding the Account, in furtherance of Defendants' collection attempts.  Accordingly, Defendant is subject to punitive damages, statutory damages, and all other appropriate measures necessary to punish and deter similar future conduct by Defendant. Moreover, Plaintiffs' injuries resulted from Defendant's malice, and/or willful and intentional misconduct, entitling Plaintiffs to recover punitive damages.

70.     Due to Defendant's conduct, Plaintiffs were forced to hire counsel, and their damages include reasonable attorney's fees incurred in prosecuting their claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, Brian Edward Anderson and Cathryn Denise Anderson, pray the Court:

A.     Enter judgment in favor of Plaintiffs and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for Defendant's violations of the FCRA, the TDCA, Plaintiffs' privacy rights, and the discharge injunction;

B       Find that appropriate circumstances exist for an award of punitive damages to Plaintiffs;

C.     Award Plaintiffs pre-judgment and post-judgment interest as allowed by law; and

D.     Grant such other and further relief, in law or equity, to which Plaintiffs might show they are justly entitled.

Respectfully submitted,


/s/ James J. Manchee
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
Marilyn S. Altamira
State Bar Number 00796119
maltamira@mancheelawfirm.com
MANCHEE & MANCHEE, PC
2745 North Dallas Parkway, Suite 420
Plano, Texas 75093
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

COUNSEL FOR PLAINTIFFS


**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

August 7th, 2018                    /s/ James J. Manchee
Date                               James J. Manchee